IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| JASON BENNETT, on behalf of himself and all others similarly situated, | Civil Action No. 14-00054 |
| **Plaintiff,** | CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF PURSUANT TO 47 U.S.C. §227 *et seq*. (TELEPHONE CONSUMER PROTECTION ACT). |
| v. | |
| MONITRONICS INTERNATIONAL, INC., and G/B MARKETING, INC., | PLAINTIFF DEMANDS TRIAL BY STRUCK JURY. |
| **Defendants.** | |

## COMPLAINT

## INTRODUCTION

This case arises from the intentional and repeated efforts of Defendants to market monitoring services for residential and commercial electronic security and alarm equipment, in violation of the Telephone Consumer Protection Act, 47 U.S.C. §227 *et seq*. (hereinafter referred to as the "TCPA"). Defendants utilize an "automatic telephone dialing system," as defined in 47 U.S.C. §227(a)(1), to place "telemarketing calls" or "telephone solicitation" calls to Plaintiff, and all others similarly situated (hereinafter referred to as "Class Members") to their cellular telephones without obtaining "prior express written consent," as defined by 47 C.F.R. §64.1200(a)(2). Plaintiff and Class Members seek injunctive relief, a judgment against Defendants for violations of the TCPA as set forth in the statute, the costs incurred in this action, and for such other, further and different relief to which Plaintiff and Class Members may be entitled under the circumstances, and as more specific grounds therefore, Plaintiff and Class Members allege on

personal knowledge, investigation of undersigned counsel, and on information and belief as follows:

## THE PARTIES

### PLAINTIFF

1.      Plaintiff, Jason Bennett (herein after referred to as "Plaintiff"), is a natural person who is a resident of Baldwin County, Alabama, and is in excess of 19 years of age.

2.      Plaintiff is, and at all relevant times was, a "person" as that term is defined by 47 U.S.C. §153(39).

### DEFENDANTS

3.      Defendant, Monitronics International, Inc. (hereinafter sometimes individually referred to as "Monitronics"), is a Texas corporation with its principal place of business in Dallas, Texas.  Defendant is registered to do business in Alabama.  Further, Defendant solicits business from residents of Alabama, provides its services to residents of Alabama, and otherwise does business in Alabama.

4.      Defendant Monitronics is, and at all relevant times was, a "person" as that term is defined by 47 U.S.C. §153(39).

5.      Defendant Monitronics is in the business of providing monitoring services for residential and commercial electronic security and alarm equipment.

6.      Defendant, G/B Marketing, Inc. (hereinafter sometimes individually referred to as "G/B Marketing"), is an Illinois corporation with its principal place of business in Vernon Hills, Illinois.  Defendant solicits business from residents of Alabama, and otherwise does business in Alabama.

7.     Defendant G/B Marketing is, and at all relevant times was, a "person" as that term is defined by 47 U.S.C. §153(39).

8.     Defendant G/B Marketing is in the business of telemarketing.

9.     Monitronics and G/B Marketing are hereinafter sometimes collectively referred to as "Defendants."

## JURISDICTION AND VENUE

10.     This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005 (hereinafter referred to as the "CAFA"), codified as 28 U.S.C. §1332(d)(2).  The amount in controversy exceeds $5,000,000.00, in the aggregate, exclusive of interest and costs, as each member of the proposed Class, of at least thousands, is entitled to damages of up to $1,500.00 for each call made by Defendants in violation of the TCPA.  Further, Plaintiff alleges a national class, which will result in at least one Class member from a different state.

11.     This Court also has Federal Question jurisdiction pursuant to 28 U.S.C. §1332 *et seq.* and 47 U.S.C. §227 *et seq.*

12.     This Court has personal jurisdiction over Monitronics because it is registered to do business in Alabama, solicits business from residents of Alabama, provides its services to residents of Alabama, otherwise does business in Alabama, and the conduct at issue in this case occurred, among other locations, in Baldwin County, Alabama.

13.     This Court has personal jurisdiction over G/B Marketing because it solicits business from residents of Alabama, otherwise does business in Alabama, and the conduct at issue in this case occurred, among other locations, in Baldwin County, Alabama.

14.     Venue is proper in the United States District Court for the Southern District of Alabama, Southern Division, because Defendants are deemed to reside in any judicial district in

which they are subject to personal jurisdiction at the time the action is commenced, and because Defendants' contacts with this District are sufficient to subject them to personal jurisdiction.  *See* U.S.C. §1391.

## THE TELEPHONE CONSUMER PROTECTION ACT OF 1991 (TCPA), 47 U.S.C. §227

**Using an ATDS to place telemarketing calls to cellular telephones without the contacted party's *prior express written consent* violates the Act.**

15.     In 1991, Congress enacted the TCPA[1] in response to a growing number of consumer complaints regarding certain telemarketing practices.

16.     The TCPA regulates, among other things, the use of automatic telephone dialing systems (hereinafter referred to as an "ATDS").

17.     Specifically, the TCPA prohibits the use of an ATDS to place "telemarketing calls" to cellular telephones without the contacted party's *prior express written consent*.  47 C.F.R. §64.1200(a)(2), *emphasis added*.

18.     The TCPA provides a private right of action for violations whereby an aggrieved party may be awarded, in addition to injunctive relief, the greater of actual damages or statutory damages in the amount of $500 for each violation (and up-to $1,500 for each call placed in violation of the statue intentionally, willfully and/or knowingly).

## PLAINTIFF'S FACTUAL ALLEGATIONS REGARDING TELEMARKETING CALLS

19.     Plaintiff has a cellular telephone number that he has used for many years.  Plaintiff has only used this number as a cellular telephone number, and Plaintiff's cellular telephone number has not been ported from a wireline service.

---

[1] Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, 105 Stat. 2394 (1991), codified at 47 U.S.C. §227 (TCPA).  The TCPA amended Title II of the Communications Act of 1934, 47 U.S.C. §201 *et seq*.

20.     Plaintiff, on or about December 16, 2013, received a telephone call from (602) 753-9875.

21.     Upon information and belief, the telephone call placed on or about December 16, 2013 to Plaintiff's cellular telephone from (602) 753-9875 was made by G/B Marketing.[2]

22.     Plaintiff, having previously received multiple calls from (602) 753-9875, answered the subject telephone call and heard the following pre-recorded message:

> "Every 20 seconds there is a break in at someone's home. If you allow us to put a sign in your yard, we will give you a free security system. Press 1 to speak with an agent, press 2 to be removed from our list."

23.     Plaintiff pressed "1" and, just prior to the call being terminated, heard the following pre-recorded message:

> "Thanks, we will have someone contact you soon."

24.     As evidenced by the pre-recorded message, and absence of a live operator, and the absence of an option to be connected with a live operator, the telephone call placed to Plaintiff's cellular telephone from (602) 753-9875 was made by G/B Marketing using an ATDS, as defined in 47 U.S.C. §227(a)(1). The factual allegations of this paragraph are likely to have more evidentiary support after Plaintiff has been granted a reasonable opportunity to conduct further investigation and discovery.

25.     No disclosure was made that, by pressing "1," Plaintiff would give his prior express written consent, as defined by 47 C.F.R. §64.1200(a)(2), to be contacted for telemarketing purposes using an ATDS.

---

[2] 602 is an Arizona area code. However, when a call is placed to (602) 753-9875, the same massage is played that is heard when a call is placed to (312) 273-1588 (an Illinois number registered to G/B Marketing). G/B Marketing likely used a "randomizer" to "spoof" the (602) 753-9875 number (and other numbers) in an effort to increase consumer response.

26.     Plaintiff has not otherwise provided his prior express written consent, as defined by 47 C.F.R. §64.1200(a)(2), to be contacted for telemarketing purposes using an ATDS.

### Telemarketing Calls from Defendants

27.     G/B Marketing immediately began placing calls to Plaintiff's cellular number. Plaintiff's caller-id indicated that some of the calls were placed from (312) 273-1588 (an Illinois number registered to G/B Marketing).

28.     Plaintiff answered the December 16, 2013 call placed to his cellular number from G/B Marketing, and he was connected (after a brief pause) with "Laurie."

29.     As evidenced by the tell-tale pause before the operator "Laurie" began to speak, the subject telephone call was placed to Plaintiff's cellular telephone by G/B Marketing using an ATDS, as defined in 47 U.S.C. §227(a)(1).  The factual allegations of this paragraph are likely to have more evidentiary support after Plaintiff has been granted a reasonable opportunity to conduct further investigation and discovery.

30.     Despite the fact that the number she called from is registered to G/B Marketing, "Laurie" identified herself as calling on behalf of "Home Protection Services."

31.     Upon information and belief, G/B Marketing identifies itself as "Home Protection Services" when placing telemarketing calls on behalf of Monitronics.

32.     "Laurie" asked Plaintiff certain "pre-qualifying questions," then transferred Plaintiff to "Ron."

33.     "Ron" informed Plaintiff that he worked for Monitronics, and then offered to sell certain residential electronic security and alarm equipment, and monitoring services, to Plaintiff.

34.     Since his conversations with "Laurie" and "Ron" on December 16, 2013, Defendants have placed additional calls to Plaintiff's cellular telephone.

35.     The telephone calls placed to Plaintiff's cellular telephone by Defendants were not made for "emergency purposes," as defined in 47 C.F.R. §64.1200.

36.     The telephone calls placed to Plaintiff's cellular telephone were made by Defendants, using an ATDS, as a "telemarketing call" or "telephone solicitation," as defined in 47 U.S.C. § 227(a)(4).

37.     All of the telemarketing calls placed to Plaintiff's cellular telephone by Defendants using an ATDS have been made intentionally, without Plaintiff's prior express written consent, and in plain violation of the TCPA.

38.     As a result of Defendants' conduct in violation of the TCPA, Plaintiff is entitled to an award of minimum statutory damages of $500.00 for each of the telemarketing calls placed to Plaintiff's cellular telephone using an ATDS.

39.     Because each of the telemarketing calls placed to Plaintiff's cellular telephone using an ATDS were made intentionally, willfully and/or knowingly by Defendants, an award of statutory damages of may be increased to as much as $1,500.00 for each of the subject telemarketing calls.

40.     Plaintiff is entitled to injunctive relief to prohibit further telemarketing calls being placed to his cellular telephone by Defendants using an ATDS.

**VICARIOUS LIABILITY FOR VIOLATIONS OF THE TELEPHONE CONSUMER
PROTECTION ACT OF 1991
(TCPA), 47 U.S.C. §227**

**Responsibility of Monitronics for violations of the TCPA committed by
G/B Marketing on behalf of Monitronics.**

41.     On January 4, 2008, the FCC released a Declaratory Ruling wherein it reiterated that "a company on whose behalf a telephone solicitation is made bears the responsibility for any

7

violations"[3]  (specifically recognizing "on behalf of" liability in the context of an autodialed or prerecorded message call sent to a consumer by a third party on another entity's behalf under 47 U.S.C. §27(b)).

42.     The FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears the ultimate responsibility for any violations."  See FCC Declaratory Ruling, Memorandum and Order, 10 FCC Rcd. 12391, 12397 (¶13) (1995).

43.     On May 9, 2013, the FCC released a Declaratory Ruling holding that a corporation or other entity that contracts out its telephone marketing "may be held vicariously liable under federal common law principles of agency for violations of…section 227(b)…that are committed by third-party telemarketers."[4]

44.     More specifically, the May 2013 FCC Ruling held that, even in the absence of evidence of a formal contractual relationship between the seller and the telemarketer, a seller is liable for telemarketing calls if the telemarketer "has apparent (if not actual) authority" to make the calls.  28 F.C.C.R. at 6586 (¶34).

45.     The FCC has rejected a narrow view of TCPA liability, including the assertion that a seller's liability requires a finding of formal agency and immediate direction and control over the third-party who placed the telemarketing call.  *Id*. at n. 107.

46.     The May 2013 FCC Ruling further clarifies the circumstances under which a telemarketer has apparent authority:

> [A]pparent authority may be supported by evidence that the seller allows the outside sales entity access to information and systems that normally would be

---

[3] *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991 ("FCC Declaratory Ruling")*, 23 F.C.C.R. 559, 23 FCC Rcd. 559, 564-65 (¶ 10), 43 Communications Reg. (P&F) 877, 2008 WL 65485 (F.C.C.) (2008).

[4] In the Matter of The Joint Petition filed by DISH Network, LLC, the United States of America, and the States of California, Illinois, North Carolina, and Ohio for Declaratory Ruling Concerning the Telephone Consumer Protection Act (TCPA) Rules, et al., CG Docket No. 11-50, 28 F.C.C.R. 6574, 6574 (¶1) (May 9, 2013) ("May 2013 FCC Ruling").

within the seller's exclusive control, including: access to detailed information regarding the nature and pricing of the seller's products and services or to the seller's customer information.  The ability by the outside sales entity to enter consumer information into the seller's sales or customer systems, as well as the authority to use the seller's trade name, trademark, and service mark may also be relevant.  It may also be persuasive that the seller approved, wrote or reviewed the outside entity's telemarketing scripts.  Finally, a seller would be responsible under the TCPA for the unauthorized conduct of a third-party telemarketer that is otherwise authorized to market on the seller's behalf if the seller knew (or reasonably should have known) that the telemarketer was violating the TCPA on the seller's behalf and the seller failed to take effective steps within its power to force the telemarketer to cease that conduct.

28 F.C.C.R. at 6592 (¶46).

47.    Finally, the May 2013 FCC Ruling states that called parties may obtain "evidence of these kinds of relationships…through discovery, if they are not independently privy to such information."  *Id*. at 6595-93 (¶46).  Moreover, evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable customer would not sensibly assume that the telemarketer was acting as the seller's authorized agent."  *Id*. at 6593 (¶46).

### PLAINTIFF'S FACTUAL ALLEGATIONS REGARDING THE LIABILITY OF MONITRONICS FOR TELEMARKETING CALLS PLACED ON ITS BEHALF IN VIOLATION OF THE TCPA

48.    Monitronics is legally responsible for ensuring that any telemarketing calls placed on its behalf by its agent, G/B Marketing, were made in compliance with the TCPA, even if Monitronics did not itself place the call.

### Apparent Authority of G/B Marketing to place telemarketing calls on behalf of Monitronics

49.    Upon information and belief, Monitronics oversees and controls the actions of G/B Marketing generally, but particularly with respect to telemarketing.

50.     Upon information and belief, Monitronics directly solicited business using G/B Marketing.

51.     "Laurie" with G/B Marketing asked Plaintiff certain pre-qualifying questions during their December 16, 2013 conversation.  The information obtained through Plaintiff's responses to these "pre-qualifying questions" was used by "Ron," Monitronics' sales representative, to market the products and services offered by Monitronics. Thus, Monitronics, upon information and belief, "allowed [G/B Marketing] access to information and systems that normally would have been within [Monitronics'] exclusive control, including…access to detailed information regarding the nature and pricing of [Monitronics'] products and services," as discussed in the May 2013 FCC Ruling; as such, G/B Marketing is an apparent agent of Monitronics.

52.     Further, even if "Ron" (customer service representative that was connected with Plaintiff after "Laurie" deemed Plaintiffs' responses to her "pre-qualifying questions" acceptable) was employed by G/B Marketing, he specifically stated to Plaintiff that he "was with" Monitronics. Thus, "Ron," upon information and belief, had authority to use Monitronics' "trade name, trademark and service mark," as discussed in the May 2013 FCC Ruling; as such, G/B Marketing is an apparent agent of Monitronics.

### Ratification by Monitronics of the telemarketing calls placed by G/B Marketing on behalf of Monitronics

53.     Further, by accepting clients generated by G/B Marketing, Monitronics repeatedly ratified G/B Marketing's illegal marketing scheme by knowingly accepting the benefits of G/B Marketing's telemarketing calls.

54.     Finally, by virtue of the fact that it had been sued in four (4) similar class actions prior to the time the call was placed to Plaintiff's cellular telephone, Monitronics was aware, or

should have reasonably been aware, that the cold-call telemarketing campaign of G/B Marketing (and its other telemarketing agents) was likely being conducted in violation of the TCPA.

55.     Monitronics may be held liable for all telemarketing calls placed on its behalf by its agent, G/B Marketing, in violation with the TCPA, even if Monitronics did not itself place the calls.

## CLASS ACTION ALLEGATIONS

56.     Plaintiff incorporates and realleges each and every allegation set forth above and incorporates the same herein by reference.

57.     Plaintiff brings this action individually and on behalf of all other persons similarly situated (hereinafter referred to as "the Class") pursuant to Rule 23, *Federal Rules of Civil Procedure*.

58.     Plaintiff proposes the following Class definition, subject to amendments as appropriate:

> All persons within the United States who, since 12:01 a.m. on October 16, 2013, received a telephone call to a cellular telephone that was placed by an automatic telephone dialing system which included or introduced an advertisement or constituted telemarketing by, for, or on behalf of Defendants, absent the contacted person's prior express written consent.

Collectively, all these persons will be referred to as "Class Members." Plaintiff represents, and is a member of, the Class.

59.     Excluded from this Class are all persons who have already settled or otherwise compromised their claims against Defendants.  Also excluded from the Class are the Defendants, and any entity in which the Defendants have a controlling interest, the Defendants' agents and employees, and Judge to whom this action is assigned and any member of such Judge's staff and

immediate family, and all people who submit timely and otherwise proper requests to for exclusion from the Class.

60.     Plaintiff does not know the exact number of members in the Class, but Plaintiff reasonably believes Class Members number, at minimum, in the thousands.

61.     Plaintiff and all Class Members have been harmed by the acts of the Defendants.

62.     This Class Action seeks injunctive relief and money damages.

63.     The joinder of all Class members is impracticable due to the size of the Class and the relatively modest value of each individual claim.

64.     The disposition of the claims in a class action will provide substantial benefit to the parties and the Court in avoiding a multiplicity of identical suits.

65.     The Class can be identified easily through records maintained by Defendants.

66.     There are well defined, nearly identical, questions of law and fact affecting all parties.

67.     Such common questions of law and fact include, but are not limited to, the following:

    a.      Whether Monitronics, and/or G/B Marketing on behalf of Monitronics, used an automatic telephone dialing system to place non-emergency telephone calls to Class Members' cellular telephones;

    b.      Whether Defendants can meet their burden of showing that they obtained prior express written consent to use an automatic telephone dialing system to place non-emergency telephone calls to Class Members' cellular telephones;

    c.      Whether Defendants' conduct was knowing and/or willful;

      d.     Whether Defendants are liable for statutory damages; and,

      e.     Whether Defendants should be enjoined from engaging in such conduct in the future.

68.    As a person who received non-emergency telephone calls on his cellular telephones placed by Monitronics, and/or G/B Marketing on behalf of Monitronics, using an automatic telephone dialing system, without Plaintiff's prior express written consent to Defendants as defined by the TCPA, Plaintiff asserts claims that are typical of each Class Member who also received such telephone calls.

69.    Plaintiff will fairly and adequately represent and protect the interests of the Class.

70    Plaintiff has no interests that are antagonistic to any Class Member.

71.    Plaintiff has retained counsel experienced in handling claims involving violations of federal consumer protection statutes, including claims under the TCPA.

72.    A class action is the superior method for the fair and efficient adjudication of this controversy.

73.    Class wide relief is essential to compel Defendants to comply with the TCPA.

74.    The interest of the Class Members in individually pursuing claims against Defendants is slight because the statutory damages for an individual action are relatively small, and are therefore not likely to deter Defendants from engaging in the same behavior in the future.

75.    Management of these claims is likely to present significantly fewer difficulties than are presented in many class claims because the calls at issue were all non-emergency telephone calls placed to Class Members' cellular telephones by Monitronics, and/or G/B Marketing on behalf of Monitronics, using an automatic telephone dialing system without Class Members' prior express written consent as required by the TCPA.

76.     Defendants have acted on grounds generally applicable to the Class, thereby making final injunctive relief and corresponding declaratory relief with respect to the Class as a whole appropriate.

77.     Moreover, on information and belief, Plaintiff alleges that the TCPA violations complained of herein are substantially likely to continue in the future if an injunction is not entered.

## CAUSES OF ACTION

### FIRST COUNT

### STATUTORY VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. §227 *et seq.*

78.     Plaintiff incorporates and realleges each and every allegation set forth above and incorporates the same herein by reference.

79.     The foregoing acts and omissions of Defendants constitute numerous and multiple violations of the TCPA, including, but not limited to, each of the above-cited provisions of 47 U.S.C. §227 *et seq.*

80.     As a result of Defendants' violations of 47 U.S.C. §227 *et seq.*, Plaintiff and each Class Member is entitled to an award of $500.00 in statutory damages for each call made in violation of the statute, pursuant to 47 U.S.C. §227 (b)(3)(B).

81.     Plaintiff and Class Members are also entitled to, and do seek, injunctive relief prohibiting Defendants violation of the TCPA in the future.

82.     Plaintiff and Class Members are also entitled to an award of attorney's fees and costs.

## SECOND COUNT

### KNOWING AND/OR WILLFUL VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. §227 *et seq*.

83.     Plaintiff incorporates and realleges each and every allegation set forth above and incorporates the same herein by reference.

84.     The foregoing acts and omissions of Defendants constitute numerous and multiple knowing and/or willful violations of the TCPA, including, but not limited to, each of the above-cited provisions of 47 U.S.C. §227 *et seq*.

85.     As a result of Defendants' knowing and/or willful violations of 47 U.S.C. §227 *et seq*., Plaintiff and each Class Member is entitled to treble damages of up to $1,500.00 for each call made in violation of the statute, pursuant to 47 U.S.C. §227 (b)(3).

86.     Plaintiff and Class Members are also entitled to and do seek injunctive relief prohibiting such conduct violating the TCPA by Defendants in the future.

87.     Plaintiff and Class Members are also entitled to an award of attorney's fees and costs.

### PRAYER FOR RELIEF

WHEREFORE, the premises considered, Plaintiff prays that this Honorable Court grant Plaintiff and all Class Members the following relief:

A.     An Order certifying this action to be a proper class action pursuant to Federal Rule of Civil Procedure 23, establishing an appropriate Class and any Subclasses the Court deems appropriate, finding that Plaintiff is a proper representative of the Class, and appointing the lawyers representing Plaintiff as counsel for the Class;

B.      As a result of Defendants' statutory violations of 47 U.S.C. §2727(B)(1), Plaintiff seeks for himself and each Class Member $500.00 in statutory damages for each call that violated the TCPA, to be paid jointly and severally by Defendants;

C.      As a result of Defendants' willful and/or knowing violations of 47 U.S.C. §2727(B)(1), Plaintiff seeks for himself and each Class Member treble damages, as provided by statute, of up to $1,500.00 for each call that violated the TCPA, to be paid jointly and severally by Defendants;

D.      Injunctive relief prohibiting such violations of the TCPA by Defendants in the future;

E.      An award of attorneys' fees and costs to counsel for Plaintiff and the Class, to be paid jointly and severally by Defendants; and,

F.      Such other, further, and different relief to which Plaintiff and the Class Members may be entitled and that this Honorable Court may deem just and proper.


**PLAINTIFF DEMANDS TRIAL BY STRUCK JURY**

                                    Respectfully submitted,

                                    s/ John R. Cox_____
                                    John R. Cox (COX030)
                                    Attorney for Plaintiff and Proposed Class
                                    9786-A Timber Circle
                                    Spanish Fort, Alabama 36527
                                    251.517.4753
                                    jrc@jrcoxlaw.com


                                    s/ Earl P. Underwood, Jr._____
                                    Earl P. Underwood, Jr. (UND006)
                                    Kenneth J. Riemer (RIE003)
                                    Additional Counsel for Plaintiff and Proposed Class
                                    UNDERWOOD & RIEMER, PC

21 S. Section Street
Fairhope, Alabama 36532
Office:  251.990.5558
epunderwood@alalaw.com
kjr@alaconsumerlaw.com


**Defendants to be served via certified mail as follows:**

Monitronics International, Inc.
c/o CT Corporation System, its Registered Agent in Alabama
2 North Jackson Street, Suite 605
Montgomery, Alabama 36104

G/B Marketing, Inc.
c/o D&L Company Agents, its Registered Agent in Illinois
216 Higgins Road
Park Ridge, Illinois 60068